J-A18029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.J., FATHER | : : : : : : : : | |
| | : | No. 713 EDA 2018 |

Appeal from the Decree January 29, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000701-2017,
FID#: 51-FN-001095-2016

BEFORE:   STABILE, J., STEVENS*, P.J.E., and STRASSBURGER**, J.

MEMORANDUM BY STEVENS, P.J.E.:               **FILED AUGUST 21, 2018**

Appellant, M.J. ("Father") appeals from the decree entered by the Philadelphia County Court of Common Pleas granting the petition of the Department of Human Services ("DHS") and involuntarily terminating his parental rights to his minor, dependent child, N.M.J. ("Child"), a male born in July of 2009, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  After careful review, we affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> On April 18, 2016, [DHS] received a General Protective Services ("GPS") report alleging that the Mother of Child went to the Albert

---

[1] By separate decree entered the same date, the trial court involuntarily terminated the parental rights of Child's mother, S.J. ("Mother").  Mother has not filed an appeal and is not a party to the instant appeal.

---

\*   Former Justice specially assigned to the Superior Court.
\*\* Retired Senior Judge assigned to the Superior Court.

Einstein Medical Center ("AEMC") with Child. Both Mother and Child tested positive for phencyclidine ("PCP"). Mother was observed banging Child's head against a wall in the AEMC emergency room. Father retrieved Child from AEMC and told AEMC that he would bring Child to his grandparents but instead returned the Child to Mother. On May 12, 2016, DHS filed an urgent dependency petition on behalf of Child. On May 24, 2016, Child was adjudicated dependent.

On January 24, 2017, Father tested positive for PCP. On March 16, 2017, the Community Umbrella Agency ("CUA") held a revised Single Case Plan ("SCP") Meeting. The SCP objectives for Father were (1) to address his medical and emotional needs; (2) to engage in a drug and alcohol treatment program; (3) to comply with a medical assessment; (4) to sign consents to allow CUA to obtain verifications; (5) to remain sober and drug free; (6) to engage in any mental health supports; (7) to complete a parenting program; and (8) to visit the Child on a regular basis. …

The underlying Petition to Terminate Father's Parental Rights to Child was filed on July 3, 2017 because Father had failed to meet his SCP objective by consistently testing positive for PCP. On January 29, 2018, [the family court] ruled to terminate Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1)(2)(5)(8) [sic] and found that termination of Father's parental rights was in the best interest of the Child pursuant to 23 Pa.C.S.A. § 2511(b).[2]

Trial Court Opinion ("T.C.O."), 4/5/18, at 1-2 (citations omitted). Father filed

a timely notice of appeal along with a concise statement of errors complained

of on appeal pursuant to Pa.R.A.P. 1925(b).

Father raises one issue for our review:

Whether the trial court erred in terminating [Father's] parental rights where Father had substantially completed all single case

---

[2] Child was represented by a Guardian *ad litem* and legal counsel at the hearing. Notes of Testimony ("N.T."), 1/29/18, at 4, 39. Both the guardian *ad litem* and counsel for Child agreed that DHS had presented sufficient grounds to warrant the termination of Father and Mother's parental rights under Sections 2511(a) and (b). N.T. at 17, 41.

plan objectives with the exception of maintaining sobriety from drug use?

Father's Brief at 4.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those

grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002)).

Moreover, this Court has emphasized that "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities... [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re A.L.D.***, 797 A.2d at 340 (internal quotation marks and citations omitted).

In the case at bar, in finding grounds for termination pursuant to Section 2511(a), the trial court reasoned as follows:

> The record demonstrated Father's ongoing inability to provide care for or control of Child due to his failure to remedy the conditions that brought Child into care. Specifically, although Father completed most of his SCP objectives, he consistently tested positive for PCP. Despite completing parenting classes and drug and alcohol treatment, Father refused to take advantage of the opportunities offered by the Commonwealth and the City of Philadelphia to be reunited with his child by actually becoming a sober and responsible adult. Father tested positive for PCP on January 23, 2017, January 24, 2017, July 5, 2017, October 26, 2017, and December 29, 2017. Father refused or was unable to understand the importance of sobriety or to comprehend that his PCP use placed his Child in great physical danger.
>
> At the termination hearing, Father admitted he used PCP but could offer no explanation for his drug use other tha[n] he took PCP when he was out of work. Father's attitude was that he only had to show up to treatment programs but not maintain sobriety.

T.C.O. at 4-5 (citations to record omitted).

Father claims DHS failed to prove grounds for termination pursuant to Section 2511(a)(2) as he substantially complied with all of his SCP objectives except for his continued drug use. Father does not address the trial court's grave concern with Father's belief that he could adequately parent Child while continuing to use PCP; instead, Father testified that he uses PCP recreationally when he is not working, asserting that PCP is his "drug of choice" as he does not drink, smoke "weed," or take pills. N.T. at 38.

Father's refusal to attempt to curb his PCP use demonstrates his failure to appreciate the risk he places his Child in when he is incapacitated by this controlled substance. The trial court emphasized this point at the termination hearing:

> In normal circumstances, I would never terminate the parental rights of a father who completed parenting and anger management, was visiting regularly, had housing, had a job, however, the elephant in the room in this case is the monkey on your back, and your consistent use of PCP which as I mentioned in [M]other's case in chief is an insidious drug, it causes people to do things that are unimaginable. And you cannot be a fit parent while using this substance. So, while your preference is to continue using drugs[,] in particular PCP, my preference is to terminate your parental rights[.]

N.T. at 43.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super.

2006). Hence, the record substantiates the conclusion that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Father cannot or will not remedy this situation. *See id.* Thus, our review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). As we discern no abuse of discretion or error of law, we do not disturb the court's findings.

As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

We note that while Father challenged the trial court's grounds for finding termination proper under Section 2511(a), Father did not raise a Section 2511(b) challenge in his statement of questions involved or include any authority or argument pertinent to this issue in his appellate brief. As such, we find Father waived this issue. This Court has specifically held "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re M.Z.T.M.W.*, 163 A.3d 462 (Pa.Super. 2017) (finding the appellant waived her challenge to Section 2511(a) by failing to develop a supporting argument in her brief and waived

her challenge to Section 2511(b) by failing to include it in her concise statement and statement of question involved section of her brief). Nevertheless, in light of the bifurcated analysis, we determine that, even if Father had properly preserved this issue for appeal, Father would not be entitled to relief.

With respect to the analysis of whether termination of parental rights is proper under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267.

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted). Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is

- 9 -

nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In this case, we cannot conclude the trial court erred in determining that termination of Father's parental rights best serves Child's needs and welfare. The trial court placed emphasis on its concern that Father could not provide Child safety given his refusal to stop his recreational use of PCP and his inability to appreciate the risk posed to Child while Father is under the influence of this controlled substance. Father's disregard for Child's security was also demonstrated by the fact that Father found it appropriate to return Child to Mother's care even after she was observed banging Child's head on the hospital wall while under the influence of PCP; Father explained that he made this decision because he had just obtained a new job, recently got married, and Mother continued to cry for Child to be returned to her home.

While Father consistently visited Child, his visits never progressed from weekly, supervised contact after twenty months of court intervention due to Father's repeated drug screenings testing positive for PCP. Although the trial court acknowledged that Child did have a bond with Father and noted that Child expressed a wish to return to his biological parents, the trial court found credible the testimony of caseworker Shakiya Hampton, who opined that the

termination of Father's parental rights was in the Child's best interest and would not cause Child irreparable harm.

The trial court also noted Child's attachment to his pre-adoptive foster mother, who he lovingly refers to as "Na na." N.T. at 5. Ms. Hampton testified that Child's interaction with his foster mother demonstrated the presence of a parent-child bond. Ms. Hampton reported that since Child was placed with his foster family, Child no longer has truancy issues at school and is doing well academically. Ms. Hampton indicated that Foster Mother provides for Child's medical and developmental needs.

As a result, we find the record supports the trial court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/18</u>